IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

SILVERGATE PHARMACEUTICALS, INC., )
)
Plaintiff, )
)    C.A. No. 18-1962 (LPS)
v. )    C.A. No. 19-1067 (LPS)
)    C.A. No. 20-1256 (LPS)
BIONPHARMA INC., )
)    **REDACTED - PUBLIC VERSION**
Defendant. )

## SILVERGATE'S OPENING BRIEF
## IN SUPPORT OF ITS MOTION FOR PRELIMINARY INJUNCTION

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
Yan-Xin Li
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
(415) 947-2000

Natalie J. Morgan
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real, Suite 200
San Diego, CA  92130-3002
(858) 350-2300

Ty W. Callahan
Granville C. Kaufman
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Silvergate
Pharmaceuticals, Inc.*

Original Filing Date: March 31, 2021
Redacted Filing Date: May 14, 2021

<u>TABLE OF CONTENTS</u>

<u>Page</u>

I.      BACKGROUND ............................................................................................................ 1

     A.     SILVERGATE AND EPANED® ........................................................................ 1

     B.     THE PI PATENTS ............................................................................................. 3

     C.     BIONPHARMA'S ANDA PRODUCT .............................................................. 3

     D.     PROCEEDINGS INVOLVING THE PI PATENTS ............................................ 3

II.     LEGAL STANDARDS ................................................................................................ 4

III.    SILVERGATE IS LIKELY TO SUCCEED ON THE MERITS .................................... 4

     A.     BIONPHARMA'S ANDA PRODUCT INFRINGES THE PI CLAIMS ................ 4

           1.    *Bionpharma's ANDA Product Meets the Buffer Limitations*............................ 5

                a. '745 Patent—DOE ................................................................................. 5

                b. '621 and '868 Patents—Literal Infringement .................................... 7

                c. '482 Patent—DOE ................................................................................. 8

           2.    *Bionpharma's ANDA Product Meets the Preservative Limitations* ................ 9

                a. '745 and '868 Patents—DOE................................................................ 9

                b. '621 and '482 Patents—Literal Infringement ................................... 11

     B.     CONSISTING ESSENTIALLY OF ................................................................ 11

     C.     BIONPHARMA CANNOT RAISE A SUBSTANTIAL QUESTION OF VALIDITY ............... 12

IV.    ABSENT INJUNCTION, SILVERGATE WILL BE IRREPARABLY HARMED ....... 14

V.     BALANCE OF HARDSHIPS FAVORS SILVERGATE ................................................. 19

VI.    PUBLIC INTEREST WEIGHS IN FAVOR OF PRELIMINARY INJUNCTION ......... 20

VII.   CONCLUSION ........................................................................................................ 20

i

<u>TABLE OF AUTHORITIES</u>

Page(s)

**Cases**

*Abbott Labs. v. Sandoz, Inc.*,
　500 F. Supp. 2d 807 (N.D. Ill. 2007) ......................................................................16

*Abbott Labs. v. Sandoz, Inc.*,
　544 F.3d 1341 (Fed. Cir. 2008) .........................................................................16, 19

*Albany Molecular Res., Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-4638,
　2010 WL 2516465 (D.N.J. June 14, 2010) ............................................................19

*Apple Inc. v. Samsung Elecs. Co.*,
　809 F.3d 633 (Fed. Cir. 2015) ...............................................................................20

*Apple, Inc. v. Samsung Elecs. Co.*,
　678 F.3d 1314 (Fed. Cir. 2012) .............................................................................17

*Biogen Int'l GmbH v. Amneal Pharm. LLC*,
　487 F. Supp. 3d 254 (D. Del. 2020) .........................................................................4

*Cordis Corp. v. Medtronic, Inc.*,
　835 F.2d 859 (Fed. Cir. 1987) ...............................................................................19

*Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, No. 14-917,
　2014 WL 5242872 (D. Conn. Oct. 15, 2014) .........................................................19

*Douglas Dynamics, LLC v. Buyers Prods. Co.*,
　717 F.3d 1336 (Fed. Circ. 2013) ...........................................................................14

*Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, No. 05-5727,
　2008 WL 1722098 (D.N.J. Mar. 28, 2008) ............................................................20

*Eli Lilly & Co. v. Apotex, Inc.*,
　837 F. App'x 780 (Fed. Cir. 2020) ...........................................................................9

*Eli Lilly & Co. v. Teva Pharm. USA, Inc.*,
　609 F. Supp. 2d 786 (S.D. Ind. 2009) ...................................................................18

*Endo Pharm. Inc. v. Actavis Labs. UT, Inc.*,
　660 F. App'x 959 (Fed. Cir. 2016) .........................................................................12

*Everett Labs., Inc. v. Breckenridge Pharm., Inc.*,
　573 F. Supp. 2d 855 (D.N.J. 2008) ........................................................................17

*Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, No. 07-4539 (SRC),
    2010 WL 4687839 (D.N.J. Nov. 10, 2010) ..................................................................16, 18

*Impax Lab's, Inc. v. Aventis Pharm., Inc.*,
    235 F. Supp. 2d 390 (D. Del. 2002) .........................................................................19, 20

*Metalcraft of Mayville, Inc. v. Toro Co.*,
    No. 16-C-544, 2016 WL 4076894 (E.D. Wis. Aug. 1, 2016) ................................15

*Mylan Institutional LLC v. Aurobindo Pharma Ltd.*,
    857 F.3d 858 (Fed. Cir. 2017) .................................................................................18, 19

*Oakley, Inc. v. Sunglass Hut Int'l*,
    316 F.3d 1331 (Fed. Cir. 2003) .................................................................................4, 12

*Par Pharm., Inc. v. Hospira, Inc.*,
    420 F. Supp. 3d 256 (D. Del. 2019) ...........................................................................8

*Par Pharm., Inc., v. Hospira, Inc.*,
    835 F. App'x 578 (Fed. Cir. 2020) ..........................................................................6, 7

*Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*,
    702 F.3d 1351 (Fed. Cir. 2012) .................................................................................14

*Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*,
    237 F.3d 1359 (Fed. Cir. 2001) .................................................................................12

*QBAS Co. v. C Walters Intercoastal Corp.*, No. 10-406,
    2010 WL 7785955 (C.D. Cal. Dec. 16, 2010) ..........................................................15

*Research Found. of State Univ. of N.Y. v. Mylan Pharm. Inc.*,
    723 F. Supp. 2d 638 (D. Del. 2010) .............................................................15, 16, 19, 20

*Robert Bosch LLC v. Pylon Mfg. Corp.*,
    659 F.3d 1142 (Fed. Cir. 2011) .................................................................................19

*Sanofi-Synthelabo v. Apotex, Inc.*,
    470 F.3d 1368 (Fed. Cir. 2006) .................................................................................16, 20

*Winter v. Natural Res. Def. Council, Inc.*,
    555 U.S. 7 (2008) ......................................................................................................4

TABLE OF ABBREVIATIONS

| '008 patent | U.S. Patent No. 9,669,008 |
|---|---|
| '482 patent | U.S. Patent No. 10,786,482 (Ex. 8) |
| '621 patent | U.S. Patent No. 10,918,621 (Byrn, Ex. C) |
| '745 patent | U.S. Patent No. 10,039,745 (Ex. 7) |
| '868 patent | U.S. Patent No. 10,772,868 (Byrn, Ex. B) |
| '987 patent | U.S. Patent No. 10,154,987 |
| ACE | Angiotensin converting enzyme |
| ANDA | Abbreviated New Drug Application |
| Bionpharma | Defendant Bionpharma Inc. |
| Bionpharma's ANDA | ANDA No. 212408 |
| [Bionpharma's] ANDA Product | Subject matter of Bionpharma's ANDA No. 212408 |
| Byrn | Declaration of Stephen R. Byrn, Ph.D (filed herewith) |
| Epaned® | EPANED® (enalapril maleate) Oral Solution, 1 mg/mL |
| Ex. | Refers to exhibits attached hereto |
| DD | Disclosure dedication |
| DOE | Doctrine of equivalents |
| FDA | U.S. Food & Drug Administration |
| F-W-R | Function-way-result |
| Patel | Declaration of Amit Patel (filed herewith) |
| PHE | Prosecution History Estoppel |
| PI Claims | Collectively, claim 7 of the '745 patent; claims 9 and 12 of the '868 patent; claims 18, 21, 23 of the '482 patent; and claims 7, 13, 18, 22, 27, and 30 of the '621 patent |
| PI Invalidity Disclosure | Bionpharma's Disclosure Of Invalidity Defenses That Bionpharma Will Assert In Connection With Plaintiff Silvergate's Anticipated Preliminary Injunction Motion, dated March 24, 2021 (Ex. 6) |
| PI Patents | Collectively, the '745, '868, '482, and '621 patents |
| POSA | Person of ordinary skill in the art |
| RTU | Ready-to-use |
| Silvergate | Plaintiff Silvergate Pharmaceuticals, Inc. |
| Stec | Declaration of Jeffery A. Stec, Ph.D. (filed herewith) |

iv

** Unless otherwise noted, all emphasis is added, all internal quotations and citations are omitted, and all "D.I." citations are to the docket in C.A. No. 18-1962.

Silvergate brings this preliminary injunction motion to prevent Bionpharma from inflicting imminent, irreparable harm on Silvergate.  First, there is a likelihood of infringement based on the evidence presented at trial in C.A. No. 18-1962 with respect to claims infringed under DOE. Second, several claims are indisputably infringed ***literally***:

| PI Patent Claim Infringed | '621 Patent | '868 Patent | '482 Patent | '745 Patent[1] |
|---|---|---|---|---|
| ***Literally*** infringed ████████████ | ██████████ | -- | -- | -- |
| DOE ████████████ | -- | -- | -- | █ |
| DOE ██████████████ | -- | -- | ████████ | -- |
| DOE ████████████ | -- | ███ | -- | -- |

If Bionpharma is allowed to launch before these infringement claims can be adjudicated, Silvergate will face immediate irreparable harm ████████████████████████████ ███████████████████████████ ██████████████████ in addition to price erosion, and loss of customers and market share.  Because this product treats serious cardiac conditions, the public's best interests and the balance of hardships favors maintaining the current status quo, where Silvergate continues to invest in educating providers on the benefits and safety of Epaned®—the one and only oral liquid enalapril formulation.  For these reasons, Silvergate requests that that the Court issue a preliminary injunction.

## I.    BACKGROUND

### A.    SILVERGATE AND EPANED®

Silvergate[2] was founded in 2010 to bring high-quality, pediatric-appropriate medicines to children.  D.I. 192 at 1.  Silvergate developed Epaned®, the first and only FDA approved RTU oral

---

[1] Silvergate moves for a preliminary injunction with respect to the '745 patent only in the event that a decision from the February 2021 trial regarding that patent is not rendered prior to expiration of the 30 month regulatory stay of approval of Bionpharma's ANDA.

[2] Presently, Silvergate is wholly owned by Azurity. ████████████████████ ███████████████████████████████  Patel, ¶ 1

enalapril solution, to bring a safe, stable drug to this underserved patient population. *Id.* Epaned®, which received FDA approval in September 2016, is an ACE inhibitor approved for treatment of hypertension in adults and children older than one month, heart failure, and asymptomatic left ventricular dysfunction. D.I. 188, ¶¶ 26-29.

The active ingredient in Epaned®, enalapril, was initially approved by FDA in 1985 as an oral solid tablet. *Id.*, ¶¶ 30, 32. However, tablets are ill-suited for pediatric or elderly patients, who may have trouble swallowing. '868 patent at 5:24-40. In the past, enalapril was administered to such patients via compounding of solid enalapril tablets, i.e., crushing solid tablets into powder by mortar and pestle at a compounding pharmacy and combining the crushed powder with a diluent to create a liquid solution. *Id.* at 5:41-53. These compounded solutions have significant drawbacks—e.g., inaccurate and inconsistent dosing, cross-contamination, and excipients present in solid tablets (but are not necessary for a liquid dosage form)—all of which are especially acute in pediatric populations. *Id.* Nevertheless, compounding remained the only real option for patients with difficulty swallowing for nearly 30 years.

Silvergate first attempted to address these problems by developing a reconstituted powder formulation of enalapril (Epaned® Kit) in 2013. D.I. 188, ¶¶ 33-34; D.I. 193 at 78:3-21; Patel, ¶ 39. While Epaned® Kit was an improvement over compounding, it remained flawed: Epaned® Kit still required the pharmacist to mix powder with diluent, leaving room for dosage errors, contamination, and inconsistencies; and it was stable for 60 days once reconstituted, meaning it could not be manufactured and distributed as a RTU solution. D.I. 193 at 78:22-79:6; 82:5-6.

Epaned® is the result of Silvergate's significant R&D efforts ███████████████████ ████████████ Stec ¶ 13. Because Epaned® is manufactured and supplied as a RTU oral solution, there is no need for reconstitution, compounding, or other manipulation prior to

administration—which removes the risks of variability in dosage, incomplete solubilization, and pharmacist error previously associated with solid or powder forms of enalapril.  D.I. 193 at 78:22-79:6; Patel, ¶ 7.  Importantly, Silvergate's Epaned® is stable for three years from the date of manufacture.  D.I. 193 at 87:4-6.  This RTU oral solution with enhanced stability and shelf-life facilitates patient compliance and ease of use.  *Id.* at 94:12-16, 111:14-15; Patel, ¶ 7.

### B.     THE PI PATENTS

Silvergate secured a number of patents to protect its investment.  The first patent to issue was the '008 patent.  Subsequent patents, all continuations of the '008 patent and including each of the four PI Patents, claim oral liquid formulations of enalapril.

### C.     BIONPHARMA'S ANDA PRODUCT

Bionpharma submitted ANDA No. 212408 to FDA seeking approval to engage in the commercial manufacture, use, offer for sale, and/or importation of its generic version of Silvergate's Epaned®.  D.I. 188, ¶ 35.  Bionpharma represented to FDA that its ANDA Product is bioequivalent to Epaned®.  D.I. 191, ¶ 133; Ex. 1.  On December 28, 2020, FDA granted tentative approval to the ANDA Product.  Ex. 2.

### D.     PROCEEDINGS INVOLVING THE PI PATENTS

On December 12, 2018, Silvergate filed the first complaint against Bionpharma which triggered a 30-month stay of FDA approval of Bionpharma's ANDA Product that expires on April 30, 2021.  D.I. 1; D.I. 3.  In February 2021, this Court conducted trial regarding the '745 and '987 patents.  Bionpharma only disputed infringement; it did not challenge the patents' validity or raise any other defenses.  Post-trial briefing concluded on March 12, 2021.

In 2020 and early 2021, the '868, '482, and '621 patents issued and Silvergate promptly asserted them against Bionpharma.  C.A. No. 20-1256 (D.I. 1, 7, 49).

## II.    LEGAL STANDARDS

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).  All four factors strongly favor granting preliminary injunctive relief to Silvergate.

## III.    SILVERGATE IS LIKELY TO SUCCEED ON THE MERITS

Silvergate is likely to succeed on the merits.  Bionpharma's ANDA Product infringes the PI Claims, and Bionpharma cannot raise a meritorious question regarding the validity of those claims.  *Oakley, Inc. v. Sunglass Hut Int'l*, 316 F.3d 1331, 1338-40 (Fed. Cir. 2003).

### A.    BIONPHARMA'S ANDA PRODUCT INFRINGES THE PI CLAIMS

Bionpharma does not (and cannot) dispute that its ANDA product literally meets the following limitations of the PI Claims[3] (Appendix A and table below).

| Claim Limitations | Uncontested Fact[4] | '745 Patent | '868 Patent | '482 Patent | '621 Patent |
|---|---|---|---|---|---|
| stable oral liquid formulation | D.I. 188, ¶ 37 | 7 | 9, 12 | 18, 21, 23 | 7, 13, 18, 22, 27, 30 |
| about 0.6 to about 1.2 mg/ml enalapril or salt thereof | D.I. 170-1, Ex. 1, ¶ 47 | 7 | 9, 12 | 18, 21, 23 | 7, 13, 18, 22, 27, 30 |
| Water | D.I. 170-1, Ex. 1, ¶ 48 | 7 | 9, 12 | 18, 21, 23 | 7, 13, 18, 22, 27, 30 |
| stable at about 5±3°C for at least 12, 24 months | D.I. 188, ¶ 37 | 7 | 9, 12 | -- | 7, 13, 18, 22, 27, 30 |
| 95% / 5% assay | D.I. 188, ¶ 37 | 7 | 9, 12 | -- | 7, 13, 18, 22, 27, 30 |
| 95% assay for at least 12, 18 months[5] | D.I. 188, ¶ 37 | -- | -- | 18, 21, 23 | -- |

---

[3] Per D.I. 222, Silvergate selected twelve (12) PI Claims for purposes of this motion.  Silvergate reserves the right to assert additional and/or different claims going forward in C.A. No. 20-1256.

[4] Bionpharma stipulated to these facts for the '745 patent and is collaterally estopped from contesting such facts for the '868, 482, and '621 patents.  *Biogen Int'l GmbH v. Amneal Pharm. LLC*, 487 F. Supp. 3d 254, 258 (D. Del. 2020).

[5] The '482 patent, claim 23 recites that the formulation is stable for at least 18 months.  Since Bionpharma stipulated ███████████████████████████████████████████████████

4

| Claim Limitations | Uncontested Fact[4] | '745 Patent | '868 Patent | '482 Patent | '621 Patent |
|---|---|---|---|---|---|
| pH of formulation is between about 3 and about 3.5 | D.I. 188, ¶ 39 | 7 | -- | 21 | -- |
| no mannitol | D.I. 188, ¶ 38 | -- | -- | 18 | -- |

The only remaining limitations contained in PI Claim 7 of the '745 patent relate to the buffer and preservative, and as explained during trial, Bionpharma's ANDA Product meets these limitations under DOE.  For the PI Claims of the '868, '482, and '621 patents, the only limitations that *may* be in dispute also relate to the buffer and preservative.  As set forth below, these buffer and preservative limitations are ***different*** than those discussed at trial.  Some of the PI Claims require "a buffer" with no requirement that it be a citrate buffer; some of the PI Claims require the specific preservative Bionpharma uses.  Thus, even if Bionpharma's ANDA Product is found not to infringe the '745 patent, it will still likely be found to infringe other PI Claims.

### 1.    *Bionpharma's ANDA Product Meets the Buffer Limitations*

As explained at trial, Bionpharma's ANDA Product contains ███████████ ██████ that buffer meets the buffer limitation of each PI Claim either literally or under DOE.

### a.    **'745 Patent—DOE**

| PI Patent | Claimed Buffer Limitation |
|---|---|
| '745 Patent | "a buffer comprising about 0.8 to about 3.5 mg/ml citric acid and about 0.1 to about 0.8 mg/ml sodium citrate" (claim 7) |

<u>*PHE does not apply*</u>.  During trial, Bionpharma asserted that through arguments and amendments during prosecution, Silvergate disclaimed buffers other than the recited citrate buffer in the '745 patent.  D.I. 192 at 2-4.  Neither PHE theory applies, and nothing bars application of DOE.  *Id.* at 4-10 (argument-based PHE does not apply because Silvergate made no clear and unequivocal disavowal of *any* type of buffer, let alone ███████████ in Bionpharma's ANDA Product); *id.* at 10-17 (amendment-based PHE does not apply because the amendment to the buffer

limitation (i) was not narrowing, (ii) was not made for purposes of patentability, and (iii) even if narrowing and related to patentability, the amendment had no more than a "tangential relation" to ██████████████████████████).[6]

*Bionpharma's buffer meets the F-W-R test*.  As explained at trial, Bionpharma's ████ ████ (i) performs substantially the same function as the claimed citrate buffer by adjusting and stabilizing the pH (D.I. 192 at 22-25), (ii) in substantially the same way of neutralizing excess ions in the solution (*id.* at 25-26), (iii) to achieve substantially the same result of maintaining pH such that the formulation is stable for at least 12-24 months (*id.* at 27-28).

*Bionpharma's buffer is insubstantially different from the claimed buffer*.  As Silvergate also previously explained, Bionpharma's buffer and the claimed buffer are highly similar (indeed, interchangeable) as both ████████████████████████████████████████████████████████████████████████████████.  D.I. 192 at 29.  Accordingly, it is clear that any differences are insubstantial.  *Id.* at 28-29.

*Amount of buffer meets the claimed range*.  The numerical amount of buffer present in Bionpharma's ANDA Product (approximately ████████████ or, when expressed in terms of molar concentration, ████████████████) meets the recited numerical amount of buffer in claim 7 of the '745 patent (i.e., ████████████████ or, when expressed in terms of molar concentration, about ████████████████)[7] under *Par Pharm., Inc., v. Hospira, Inc.*, 835 F. App'x 578 (Fed. Cir. 2020).  The Federal Circuit held that whether an amount literally meets a claim limitation reciting "about" an amount requires a factual inquiry regarding

---

[6] Bionpharma also argued at trial that claim vitiation further barred application of DOE because these claims require ████████████████████████████████ D.I. 192 at 31-32.  As explained in Silvergate's post-trial briefing, Bionpharma's contention is wrong and contrary to the language of the claims (which explicitly recite a formulation that may comprise ██████████████████).  *Id.*; D.I. 191, ¶ 136.

[7] *See* Appendix B at B-1, B-2; D.I. 191, ¶¶ 126-128, 131-134.

whether the amount captures the purpose of the claim limitation.  *Id.* at 581, 584; *see also* D.I. 192 at 29-30.  Silvergate previously explained that the amount of Bionpharma's buffer captures the purpose of the claimed amount as it adjusts and maintains the pH, and allows the formulation to be stable.  D.I. 192 at 29-31.[8]

b.    **'621 and '868 Patents—Literal Infringement**

| PI Patent | Claimed Buffer Limitation |
|---|---|
| '621 Patent | "a buffer to maintain the pH about 4.5 or below" (claim 30)<br>"a buffer to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM" (claims 13, 18, 27)<br>"the buffer concentration is about 5 mM to about 20 mM … the buffer maintains the pH at about 3.3" (claim 7)<br>"the buffer concentration is about 5 mM to about 20 mM … the buffer maintains the pH between about 3 and about 4" (claim 22) |
| '868 Patent | "a buffer to maintain the pH about 4.5 or below, wherein the buffer concentration is about 5 mM to about 20 mM" (claims 9, 12) |

The buffer limitations of the '621 and '868 PI Claims are broader than the buffer limitations of the '745 and '482 PI Claims in that they *do not require any specific type of buffer*, but instead simply recite "a buffer" (and in some instances in certain mM concentrations) that maintains the pH at the recited range.  As explained below, Bionpharma's ███████ *literally* meets these buffer limitations of the '868 and '621 patents.

Bionpharma's ANDA Product literally meets the buffer limitation of claim 30 of the '621 patent which simply requires "a buffer to maintain the pH at about 4.5 or below."  Bionpharma's ANDA Product contains ████████████████████████████████████████

---

[8] The difference between the amount of buffer in Bionpharma's ANDA Product and the lower end of the recited ████████████████████████████████████ and is thus encompassed by the range of "about" in the claim.  *Par*, 835 F.App'x at 584-85 (affirming the District Court's finding that "about 6 to 8 mg/mL" literally encompassed an amount constituting *a deviation of 50%* of the total claimed range); D.I. 192 at 30-31.

(continued...)

 ; *see also* D.I. 188, ¶ 39.[9]

The remaining buffer limitations of the '868 and '621 PI Claims further require that the buffer be present in a concentration of "about 5 mM to about 20 mM" and are also literally infringed.  Bionpharma's ████████ maintains the pH of the ANDA Product between ████ ████████████████████████████████████████████████████.  Second, as explained *Supra* § III.A.1.a., Bionpharma's ANDA Product contains approximately ████████ ████████ which also literally meets the recited range of "about" 5-20 mM under *Par.*

c.  **'482 Patent—DOE**

| PI Patent | Claimed Buffer Limitation |
|---|---|
| '482 Patent | "a buffer comprising a mixture of citric acid and sodium citrate, wherein the buffer is present at a concentration between about 5 mM and about 20 mM in the oral liquid formulation" (claims 18, 21, 23) |

Bionpharma's ████████ also meets the '482 patent buffer limitation under DOE.

*PHE and vitiation do not apply*.  For the exact same reasons as described for claim 7 of the '745 patent, PHE and the doctrine of claim vitiation do not apply.  *See supra* III.A.1.a.

In its notice letter, Bionpharma asserted that PHE applies to bar application of DOE due to Silvergate's amendment of the claimed amount from "1-4 mg/ml" to "between about 5 mM and about 20 mM."  Ex. 3 at 13-14.  However, as set forth in a remark accompanying that amendment, a mathematical conversion of "1-4 mg/ml" of citrate buffer into molar concentration (i.e., "mM") shows the amendment only exchanged one term of measurement for another without substantively

---

[9] That Bionpharma argues it has no buffer does not take its ████████ out of the literal scope of the '868 and '621 PI Claims as – regardless of what Bionpharma labels the components of its ANDA Product – Bionpharma's ANDA Product factually contains a ████████ that functions as the recited buffer.  *See Par Pharm., Inc. v. Hospira, Inc.*, 420 F. Supp. 3d 256, 267, 277-78 (D. Del. 2019) (finding infringement of a patent requiring a "transition metal complexing agent," despite the ANDA filer's argument that its ANDA product did not contain such an agent, as the ANDA filer's proposed "citric acid [buffer] is a very, very well-known transition metal complexing agent").

changing the quantity.  Ex. 4 at 8.  When an amendment merely exchanges one term for an equivalent term, as Silvergate did here, the amendment is not narrowing, and thus no PHE arises. *Eli Lilly & Co. v. Apotex, Inc.*, 837 F. App'x 780, 784 (Fed. Cir. 2020).

*Bionpharma's buffer is equivalent to the claimed buffer*.  Like claim 7 of the '745 patent, the PI Claims of the '482 patent recite a citric acid/sodium citrate buffer.  Thus, as explained above, with respect to the identity of the claimed buffer, Bionpharma's ████████ is equivalent to the claimed buffer.  *Supra* § III.A.1.a.

*Bionpharma's buffer concentration meets the claimed range*.  The amount of buffer recited in claim 7 of the '745 expressed in terms of molar concentration is about 4.55 mM to about 21.3 mM of buffer (Appendix B at B-1), a marginal difference from the about █████████ in the '482 patent.  Thus, the numerical quantity of Bionpharma's ████████ meets the "about" range of the claimed citrate buffer.  *Supra* § III.A.1.a.

### 2. Bionpharma's ANDA Product Meets the Preservative Limitations

Bionpharma's ANDA Product contains ██████████████████████ ██████ preservative.  D.I. 191, ¶ 169; Appendix B at B-4.

#### a. '745 and '868 Patents—DOE

| PI Patent | Claimed Preservative Limitation |
|---|---|
| '745 Patent | "about 0.7 to about 1.2 mg/ml sodium benzoate" (claim 7) |
| '868 Patent | "about 1 mg/ml of a preservative that is sodium benzoate" (claims 9, 12) |

*DD Does Not Apply*.  During trial, Bionpharma asserted that the DD applies to bar a finding of infringement under DOE.  As Silvergate explained, the DD *only* applies where the specification discloses the unclaimed matter *as an alternative* to the claim limitation, and thus is not applicable here.  D.I. 192 at 18-20.

*Bionpharma's preservative meets F-W-R test*.  As explained at trial and in Silvergate's

9

post-trial briefing, Bionpharma's preservative: (i) performs substantially the same function as the claimed preservative by exerting antimicrobial effectiveness (D.I. 192 at 33), (ii) in substantially the same way by asserting this effectiveness at the same pH range of 3.2 to 3.6 (*id.* at 34-35), (iii) to achieve substantially the same result of preventing microbial growth (*id.* at 35).  Bionpharma's preservative thus satisfies the F-W-R test.[10]  D.I. 192 at 32-35.

*Bionpharma's preservative is insubstantially different from the claimed preservative*.  As Silvergate also previously explained, sodium benzoate, ███████████████████ have very similar chemical structures (differing only in their side chains) and exert an identical antimicrobial effect in the formulation.  *Id.* at 35-36.  Thus, Bionpharma's preservative infringes under this test as well.  *Id.*

*Amount of Bionpharma's preservative meets the claimed range*.  The amount of preservative in Bionpharma's ANDA Product ███████ meets the recited preservative range in claim 7 of the '745 patent (***about*** 0.7 to ***about*** 1.2 mg/mL).  Specifically, as Silvergate previously explained, the amount of preservative in Bionpharma's ANDA Product is sufficient to serve the preservative limitation's purpose of preventing microbial growth, and further, Bionpharma's ████ ████████████████████████████████████████████████████████████████ ████████████████████████████████  Thus, under *Par* (*supra* § III.A.1.a), the limitation is met by Bionpharma's ANDA Product.

Likewise, Bionpharma's ████████ preservative meets the "***about*** 1 mg/ml" of sodium benzoate limitation of the '868 patent PI Claims because it acts as an antimicrobial in Bionpharma's ANDA Product and, under *Par,* the ███████████████████ considering the purpose of the preservative.

---

[10] Bionpharma's argument that its ███████████████ could not infringe a single-component limitation under DOE (D.I. 219 at 17-18) is contrary to the law.  D.I. 192 at 37-38.

b.     **'621 and '482 Patents—Literal Infringement**



*Supra* § III.A.2.b.

## B.     CONSISTING ESSENTIALLY OF

The PI Claims of the '868 and '621 patents recite a stable liquid formulation, "*consisting essentially of*" recited components.  This transitional phrase does not provide Bionpharma with a non-infringement argument for at least two alternative reasons.  First, there are no ingredients in Bionpharma's ANDA product that are not recited in the claims.  The ingredients in Bionpharma's

ANDA product are ███████████████████████ and ███████ (which, as discussed above, meet the enalapril ███████, buffer, and preservative limitations of the claims). Each of the PI Claims of the '868 and '621 patents also recite water, a sweetener, and a flavoring agent,[11] limitations that encompass the remaining ingredients in Bionpharma's ANDA product—water, sucralose (sweetener), propylene glycol (sweetener and/or flavoring agent), sorbitol (sweetener), and mixed berry flavor (flavoring agent). Byrn, ¶ 5, 6, 21-23.[12]

With respect to propylene glycol, even if it is not characterized as a sweetener (which it is), it is not excluded by the "consisting essentially of" transitional phrase because it does not have a material effect on the basic and novel properties of the claimed invention (*id.*, ¶¶ 15-20). *Endo Pharm. Inc. v. Actavis Labs. UT, Inc.*, 660 F. App'x 959, 965-66 (Fed. Cir. 2016) (affirming infringement of "consisting essentially of" claim where the ANDA product included an unrecited component that did not "play a material role" in the basic and novel properties of the claimed invention).

Accordingly, there is a likelihood of success on the merits with respect to infringement.

### C.    BIONPHARMA CANNOT RAISE A SUBSTANTIAL QUESTION OF VALIDITY

Bionpharma is unlikely to raise any substantial question concerning validity of the PI Patents. *Oakley*, 316 F.3d at 1339-40. Each patent is entitled to a presumption of validity. Absent persuasive evidence of invalidity, the "very existence" of Silvergate's patents satisfies Silvergate's burden to show a likelihood of success with respect to validity. *Purdue Pharma L.P. v. Boehringer Ingelheim GmbH*, 237 F.3d 1359, 1365 (Fed. Cir. 2001). Bionpharma identified no such "persuasive evidence." For the '745 patent, Bionpharma did not challenge validity at trial, and

---

[11] Notably, the specification defines "a" as "one or more." '868 patent at 29:23-28.
[12] Bionpharma's ANDA describes each of sucralose, propylene glycol, sorbitol, and mixed berry flavor as a sweetener, flavoring agent, or both. Byrn, ¶¶ 5, 6, 21-23.

thus waived any invalidity defense.  Ex. 6 at 1 and n. 2.  For the '868, '482 and '621 patents, Bionpharma similarly fails to identify an actual challenge to validity.

Bionpharma's PI Invalidity Disclosure first asserts that the PI Claims are invalid for lack of written description and enablement.  *See generally* Ex. 6.  Yet Bionpharma fails to identify ***any*** claim limitations that allegedly lack such written description/enablement, let alone explain ***why*** these limitations are invalid on such grounds; instead, Bionpharma simply parrots the bare, general legal standard.  *Id*.  This does not satisfy Bionpharma's obligation to "disclose ***all bases***" of invalidity as this Court ordered (D.I. 222).[13]  This fails to raise any question of invalidity.

Bionpharma's PI Invalidity Disclosure also asserts that the PI Claims are invalid for obviousness in view of Epaned® Kit, the '747 patent, IP and Brenner, Remington, HPE, and FDA Stability Guidance.  *See generally* Ex. 6.  However, Bionpharma failed to identify ***any*** reasons to combine this prior art or ***any*** reasons why such combinations would result in a reasonable expectation of success in arriving at the claimed invention (i.e., failed to disclose the "bases" for its assertions).  Assuming it is the same as that raised by Amneal at trial, as the prior art disclosed by Bionpharma is identical to the prior art asserted by Amneal at trial, Bionpharma's challenge here should fail for the same reasons as Amneal's.  Specifically, Amneal asserted that there was an "obvious path" to the claimed stable liquid formulations of enalapril by starting with the Epaned® Kit,[14] and then utilizing the teachings of IP and Brenner, Remington, HPE, and FDA Stability Guidance that purportedly disclosed the optimal pH, ingredients, and stability for a RTU

---

[13] Bionpharma asserted in its preliminary disclosure of proposed claim terms and constructions (served on March 17, 2021) that certain claim limitations are ***indefinite***, however Bionpharma made no indefiniteness assertions in its PI Invalidity Disclosure (which governs the scope of this preliminary injunction proceeding).  Indefiniteness is plainly different than written description/enablement.

[14] The Epaned® Kit is a commercial embodiment of the '747 patent.   C.A. No. 19-678, D.I. 189, ¶ 18.

solution of enalapril to simply retain some aspects of Epaned® Kit while dispensing with others. D.I.197 at 693:19-694:7.  As explained at trial, Amneal's assertions are unavailing at least because: (a) a POSA would not have been motivated to modify Epaned® Kit into a RTU in the first place because the simple existence of the Kit would indicate to a POSA that powder-for-reconstitution was the best possible option; and (b) even though the pH, ingredient, and stability teachings of the other prior art references were available ***for decades*** before the patents, no one before Silvergate ever combined these teachings to create a stable, RTU oral liquid formulation of enalapril.  *Id.* at 808:1-19; D.I. 199 at 850:5-11, 851:2-6, 851:25-852:3.

## IV.    ABSENT INJUNCTION, SILVERGATE WILL BE IRREPARABLY HARMED

Bionpharma is imminently poised to launch its generic equivalent to Epaned into the market because it has tentative approval and the 30-month stay is expiring in April.  A launch by Bionpharma would cause Silvergate significant irreparable harm unless Bionpharma is preliminarily enjoined, as set forth below.

*Direct Competition*.  Silvergate and Bionpharma are direct competitors, as Bionpharma's ANDA Product will likely be substituted for Silvergate's branded Epaned® product as the generic equivalent.  Patel, ¶¶ 9-12; Stec, ¶ 67-69.  In such instances, as here, "[w]here two companies are in competition with one another, the patentee suffers the harm – often irreparable – of being forced to compete against products that incorporate and infringe its own patented inventions."  *Douglas Dynamics, LLC v. Buyers Prods. Co.*, 717 F.3d 1336, 1345 (Fed. Circ. 2013); *Presidio Components, Inc. v. Am. Tech. Ceramics Corp.*, 702 F.3d 1351, 1363 (Fed. Cir. 2012).  This irreparable harm caused by Bionpharma's direct competition would be further exacerbated by the facts that: (a) Epaned® currently enjoys 100% of the RTU liquid enalapril market and Silvergate

would lose its market exclusivity following Bionpharma's launch;[15] and (b) ███████████
████████████████████████████ ████████████████ Stec ¶ 67-69; Patel ¶¶ 5, 8, 12;

*Metalcraft of Mayville, Inc. v. Toro Co.*, No. 16-C-544, 2016 WL 4076894, at *4 (E.D. Wis. Aug.

1, 2016), (where patentee previously owned 100% of the market, direct competition and loss of

exclusivity "suggest[s] strongly the potential for irreparable harm"); *QBAS Co. v. C Walters*

*Intercoastal Corp.*, No. 10-406, 2010 WL 7785955, at *12 (C.D. Cal. Dec. 16, 2010) (given

"relatively small size of [company], losses this great can be devastating").

    *Harm From Bionpharma's Lower Priced Generic.*  Bionpharma's generic will almost

certainly be priced much lower than Epaned®, both because Bionpharma does not have to recoup

██████████████████ Silvergate invested to develop, commercialize, and obtain FDA approval

for Epaned®, and because ███████████████████████████████████████

████  Patel ¶ 11; Stec ¶ 70.  Thus, when a physician writes a prescription for Epaned®,

Bionpharma's ███████████████████████████████ Patel ¶ 11.

    As a result, Silvergate expects ████████████████████████████████

███████████ ███████ Patel, ¶ 12, 15; Stec, ¶ 67-69. ████████████████████████

████████████████████████████████████████████████████████

████████████████████████████ even if Bionpharma is only on the market for a single

day, Bionpharma could flood the market with an entire year's volume or more of its generic before

it exits the market, ████████████████████████████████████████████

████████████████████████████ Patel, ¶ 17.  *Research Found. of State Univ. of N.Y.*

*v. Mylan Pharm. Inc.*, 723 F. Supp. 2d 638, 658 (D. Del. 2010) (finding irreparable harm from lost

---

[15] Silvergate brands Epaned® as being *the first* and *the only* FDA approved RTU liquid enalapril
formulation. Patel, ¶ 7; Stec, ¶ 14.  If Bionpharma launches, Silvergate would not only lose its
ability to differentiate Epaned® as *the only* such product, ███████████████████████
████████████████████████████████ ████████████████████ Patel, ¶¶ 31-35.

market share and revenue due to generic "inventory overhang"); *see also Abbott Labs. v. Sandoz, Inc.*, 544 F.3d 1341, 1361-62 (Fed. Cir. 2008).

Additionally, Bionpharma's lower-priced generic would almost certainly ███ ████████████████████████████ Patel, ¶ 15; Stec, ¶¶ 70, 81-82. ████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████ ████████ this would still result in ████████████████████████████ because the prescriptions would still be filled ████████████████ Patel, ¶ 15. And, should Bionpharma's generic be removed from the market, ████████████████████████ ████████████████████████████████████[16] Patel, ¶¶ 16, 18-19; Stec, ¶ 82. Such irreversible effects from generic price erosion pressures is another classic type of irreparable harm. *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1382 (Fed. Cir. 2006); *Abbott Labs. v. Sandoz, Inc.*, 500 F. Supp. 2d 807, 844-45 (N.D. Ill. 2007); *Hoffmann-La Roche Inc. v. Cobalt Pharm. Inc.*, No. 07-4539 (SRC), 2010 WL 4687839, at *11-12 (D.N.J. Nov. 10, 2010).[17]

*Reversion to Compounded Drugs and Costs of Reeducation.* Silvergate ████ ████████████████████████████████████ on the benefits (efficacy and safety) of Epaned® product over compounded drug formulations. Patel, ¶¶ 18, 37-41; Stec, ¶ 82. But if Bionpharma launches, Silvergate has the ████████████████████████████████

[16] ████████████████████████████████████████████████████████ ████████████████████ Patel, ¶ 18, 42; Stec, ¶¶ 73-74. ████████████████ ████████████████████████████████ Patel, ¶¶ 18, 46.

[17] ████████████████████████████████████████████████████████ ████████████████████████████████████████████████ Patel, ¶¶ 13-14. ████████████████████████████████ *Sanofi*, 470 F.3d at 1382; *Abbott*, 500 F. Supp. 2d at 844-45; *Hoffmann*, 2010 WL 4687839 at *11–12.



16

█████████████████████████████████████████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████ Patel, ¶¶ 22, 44-45.  Yet this may

result in poorer results for patients as fewer healthcare providers and patients will learn about the

benefits of Epaned® over compounded options.  Patel, ¶¶ 38-40, 44-47; Stec, ¶¶ 77, 82.  And even

if Bionpharma's generic was removed from the market, Silvergate ████████████████████

████████████████████████████████████  ███████████████████████

███████████████████████████ Patel, ¶ 45; Stec, ¶ 74.  This is another recognized classic

form of irreparable harm.  *See Everett Labs., Inc. v. Breckenridge Pharm., Inc.*, 573 F. Supp. 2d

855, 868 (D.N.J. 2008) (recognizing such a decision as a "Hobson's choice" for branded

pharmaceutical companies).

>    *Harm to Silvergate's* █████████████████████████████████████

█████████████████████████████████████████████████████████████

███████████████████████████████████████████ Patel, ¶¶ 20-24.

███████████████████████████████████  ███████████████████████████

█████████████████████████████████████████████████████████████

████████████████████████████████████████████ *Id.*, ¶ 23; Stec, ¶ 77.

Such harm ██████████████████████████████████ is yet another classic type of irreparable harm.

*Apple, Inc. v. Samsung Elecs. Co.*, 678 F.3d 1314, 1337 (Fed. Cir. 2012) ████████████████████

██████████████████████████████████████.

>    *Loss of* ██████████████████████████████ All of the lost sales and revenues

described above will likely further result in significant harms to Silvergate's █████████████████

█████████ Even a short period of Bionpharma's generic entry may result in ████████████████████

███████████████████████████████

███████████████████████████████

████████████████████████ Patel, ¶¶ 26-30; Stec, ¶¶ 76, 78-80; *see also Hoffmann*, 2010 WL 4687839 at *12 (reduction in workforce is irreparable harm); *Eli Lilly & Co. v. Teva Pharm. USA, Inc.*, 609 F. Supp. 2d 786, 811-12 (S.D. Ind. 2009) (loss of research opportunities is irreparable harm).

    <u>*Causal Nexus*</u>.   An injunction is proper because a causal nexus exists between Bionpharma's infringement and Silvergate's irreparable harm – i.e., there is "some connection between the patented features and demand for the infringing product." *Apple Inc. v. Samsung Elecs. Co.*, 809 F.3d 633, 639, 641 (Fed. Cir. 2015). ██████████████████ ████████████████████████ ████████████████████████ ██████████████████ Each of these patents are key to providing a suitable, RTU oral liquid enalapril formulation for those patients for whom conventional solid dosage forms are unsuitable.[18] D.I. 197 at 799:2-12; Byrn, ¶¶ 15-16.  Moreover, ██████████████████████ ██████████████ ███████████████████████ ██████████urther show that it is the patented features which provide the desired safety and efficacy, rather than some other factor such as marketing, that drive consumer demand for Epaned®.  D.I. 193 at 88:14-21, 103:13-20, 104:17-105:3, 108:20-109:5.  This provides additional evidence of the required nexus for a showing of irreparable harm.  *Mylan Institutional LLC v. Aurobindo Pharma Ltd.*, 857 F.3d 858, 872-73 (Fed. Cir. 2017); *Covidien Sales LLC v. Ethicon Endo-Surgery, Inc.*, No. 14-917, 2014 WL 5242872, at *12 (D. Conn. Oct. 15, 2014).

---

[18] ████████████████ ██████████████████████████████████████ ████████████████████████████████████████ ██████████████████████ *See* Byrn, ¶ 15, 16.

The imminent harm to Silvergate is also directly tied to Bionpharma's infringement. Bionpharma has specifically utilized the patented features in order to obtain approval as a therapeutic equivalent to Epaned®, thus capitalizing on the goodwill of Silvergate's pioneering (and patented) efforts to develop the first RTU liquid formulation of enalapril.  Patel ¶ 11; Stec ¶ 53.  Each of the irreparable harms discussed above will thus be a direct result of Bionpharma targeting doctors and patients with a lower cost, generic version of Epaned® that these doctors and patients would only utilize based on its association with Epaned.  *Mylan Institutional*, 857 F.3d at 872-73 (causal nexus shown where defendant could not make its product without infringing the patents).

## V.    BALANCE OF HARDSHIPS FAVORS SILVERGATE

Silvergate's harm will be much greater absent an injunction than the harm to Bionpharma if an injunction is granted.  Requiring Silvergate to compete against its own patented invention, with the resultant harm described above, places a substantial hardship on Silvergate.  *Robert Bosch LLC v. Pylon Mfg. Corp.*, 659 F.3d 1142, 1156 (Fed. Cir. 2011); *Albany Molecular Res., Inc. v. Dr. Reddy's Labs., Ltd.*, No. 09-4638, 2010 WL 2516465, at *11 (D.N.J. June 14, 2010); Stec, ¶ 81.  Moreover, it is well settled that the purpose of a preliminary injunction is to preserve the status quo and protect the respective rights of the parties pending a merits determination.  *Cordis Corp. v. Medtronic, Inc.*, 835 F.2d 859, 863 (Fed. Cir. 1987); *Abbott*, 544 F.3d at 1362; *Impax Lab's, Inc. v. Aventis Pharm., Inc.*, 235 F. Supp. 2d 390, 396 (D. Del. 2002).  Issuing an injunction now would impose little consequence to Bionpharma because it has not yet launched its ANDA Product, and it would not lose its first-filer exclusivity.  Stec, ¶¶ 87-88.  Thus, the balance of the harms tips in favor of Silvergate.  *Research Found.*, 723 F. Supp. 2d at 661 (even if preliminary injunction granted against first filer, the mere "time-shifting" of revenues from 180-days of exclusivity does not tip balance of harms in favor of generic defendant).

19

## VI.   PUBLIC INTEREST WEIGHS IN FAVOR OF PRELIMINARY INJUNCTION

The public interest also weighs in favor of granting a preliminary injunction. The public has a significant interest in protecting patentee's right to exclude, and without which, incentives for research and development are lost. *Sanofi*, 470 F.3d at 1383–84; *Eisai Co., Ltd. v. Teva Pharm. USA, Inc.*, No. 05-5727, 2008 WL 1722098, at *12 (D.N.J. Mar. 28, 2008). Here, the public greatly benefits from Epaned® and it was these incentives of the patent system that encouraged Silvergate to invest the resources necessary to develop Epaned®. Without patent protection, the public would be deprived of groundbreaking medical advances such as Epaned®. Moreover, if Bionpharma is permitted to launch and then its generic removed from the market, patients could resort back to the less safe and less effective compounded formulations of enalapril thereby potentially harming the public interest. Patel at ¶¶ 18, 42-44, 46-47.

No public interest outweighs encouraging this type of investment in medical development. If Bionpharma is prevented from selling its product, patients will still have access to safe and effective RTU liquid formulations of enalapril from Silvergate which has the capacity to fully meet patient demand with its Epaned® Oral Solution product. Patel, ¶ 48. In cases such as this one where Silvergate is practicing its invention and can meet consumer demand, "the public interest nearly always weighs in favor of protecting property rights." *Apple Inc.*, 809 F.3d at 647; *see also Impax*, 235 F. Supp. 2d at 396-97; *Research Found.*, 723 F. Supp. 2d at 663.

## VII.   CONCLUSION

For the foregoing reasons, Silvergate respectfully submits that this Court should grant Silvergate's Motion for a Preliminary Injunction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

*/s/ Megan E. Dellinger*

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
Yan-Xin Li
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA 94105
(415) 947-2000

Natalie J. Morgan
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real, Suite 200
San Diego, CA 92130-3002
(858) 350-2300

Ty W. Callahan
Granville C. Kaufman
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

March 31, 2021

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Silvergate
Pharmaceuticals, Inc.*