# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| SILVERGATE PHARMACEUTICALS, INC., | ) |
| | ) C.A. No. 18-1962 (LPS) |
| *Plaintiff*, | ) C.A. No. 19-1067 (LPS) |
| | ) C.A. No. 20-1256 (LPS) |
| v. | ) |
| | ) **REDACTED - PUBLIC VERSION** |
| BIONPHARMA INC., | ) |
| | ) |
| *Defendant*. | ) |
| | ) |

## SILVERGATE'S REPLY BRIEF IN FURTHER SUPPORT OF ITS MOTION FOR <u>PRELIMINARY INJUNCTION</u>

*Of Counsel:*

Wendy L. Devine
Kristina M. Hanson
Yan-Xin Li
WILSON SONSINI GOODRICH & ROSATI, P.C.
One Market Plaza
Spear Tower, Suite 3300
San Francisco, CA 94105
T: (415) 947-2000

Natalie J. Morgan
WILSON SONSINI GOODRICH & ROSATI, P.C.
12235 El Camino Real, Suite 200
San Diego, CA 92130
T: (858) 350-2300

Ty W. Callahan
Granville C. Kaufman
WILSON SONSINI GOODRICH & ROSATI, P.C.
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
T: (323) 210-2900

MORRIS, NICHOLS, ARSHT & TUNNELL LLP
Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE 19899
T: (302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Silvergate Pharmaceuticals, Inc.*

Original Filing Date: April 26, 2021
Redacted Filing Date: May 14, 2021

## <u>TABLE OF CONTENTS</u>

I.      SUCCESS ON THE MERITS—INFRINGEMENT ......................................................... 2

        A.      '621 AND '868 PATENTS, BUFFER LIMITATIONS—LITERAL INFRINGEMENT ........... 2

        B.      '482 PATENT, CITRATE BUFFER LIMITATIONS—DOE INFRINGEMENT ................... 5

        C.      BIONPHARMA'S ANDA PRODUCT MEETS THE PRESERVATIVE LIMITATIONS .......... 5

II.     NO SUBSTANTIAL QUESTION OF VALIDITY—WRITTEN DESCRIPTION ......... 6

III.    NO SUBSTANTIAL QUESTION OF VALIDITY—ENABLEMENT ......................... 10

IV.     NO SUBSTANTIAL QUESTION OF VALIDITY—OBVIOUSNESS......................... 11

V.      BIONPHARMA IGNORES FACTS DEMONSTRATING IRREPARABLE HARM ... 12

VI.     BALANCE OF HARDSHIPS AND PUBLIC POLICY SUPPORT SILVERGATE...... 14

VII.    BIONPHARMA FAILS TO SUPPORT ITS BOND REQUEST ................................... 15

VIII.   CONCLUSION................................................................................................................ 15

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

### Cases

*Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, No. 09-40089,
  2014 WL 7330777 (D. Mass. Dec. 19, 2014) .......................................................................... 9

*Alcon Research Ltd. v. Barr Labs., Inc.*,
  745 F.3d 1180 (Fed. Cir. 2014) ............................................................................................... 7

*Allergan Sales, LLC v. Sandoz, Inc.*,
  717 F. App'x 991 (Fed. Cir. 2017) ...................................................................................... 6, 7

*Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*,
  480 F.3d 1335 (Fed. Cir. 2007) ............................................................................................... 5

*Eli Lilly & Co. v. Hospira, Inc.*,
  933 F.3d 1320 (Fed. Cir. 2019) ........................................................................................... 5, 6

*Enzo Biochem, Inc. v. Gen-Probe Inc.*,
  323 F.3d 956 (Fed. Cir. 2002) ............................................................................................... 10

*Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*,
  276 F. Supp. 3d 629 (E.D. Tex. 2017) ................................................................................... 11

*Idenix Pharm. LLC v. Gilead Scis., Inc.*,
  941 F.3d 1149 (Fed. Cir. 2019) ......................................................................................... 7, 11

*Insituform Techs., Inc. v. Cat. Contracting, Inc.*,
  385 F.3d 1360 (Fed. Cir. 2004) ........................................................................................... 5, 6

*LEGO A/S v. ZURU Inc.*,
  799 F. App'x 823 (Fed. Cir. 2020) ........................................................................................ 15

*Lochner Techs., LLC v. Vizio, Inc.*,
  567 F. App'x 931 (Fed. Cir. 2014) .......................................................................................... 6

*Monsanto Co. v. Scruggs*,
  459 F.3d 1328 (Fed. Cir. 2006) ............................................................................................. 11

*Mytee Prods., Inc. v. Harris Research, Inc.*,
  439 F. App'x 882 (Fed. Cir. 2011) ........................................................................................ 12

*Nuvo Pharm. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*,
  923 F.3d 1368 (Fed. Cir. 2019) ............................................................................................... 7

*Par Pharm., Inc. v. TWI Pharm., Inc.*, No. 11-2466,
2014 WL 3956024 (D. Md. Aug. 12, 2014) ................................................................15

*Pernix Ir. Pain DAC v. Alvogen Malta Operations, Ltd.*,
323 F. Supp. 3d 566 (D. Del. 2018) .............................................................................7

*Pfizer, Inc. v. Teva Pharm., USA, Inc.*,
429 F.3d 1364 (Fed. Cir. 2005) ..................................................................................15

*Phillips v. AWH Corp.*,
415 F.3d 1303 (Fed. Cir. 2005) ....................................................................................2

*Sanofi-Aventis U.S. LLC v. Mylan GmbH*, No. 17-9105,
2020 WL 1151191 (D.N.J. Mar. 9, 2020) ...................................................................12

*Sanofi-Synthelabo v. Apotex, Inc.*,
470 F.3d 1368 (Fed. Cir. 2006) ..................................................................................15

*SightSound Techs., LLC v. Apple Inc.*,
809 F.3d 1307 (Fed. Cir. 2015) ....................................................................................4

*Silvergate Pharm. Inc. v. Bionpharma Inc.*, No. 16-876,
2018 WL 1610513 (D. Del. Apr. 3, 2018) ....................................................................4

*Superior Fireplace Co. v. Majestic Prods. Co.*,
270 F.3d 1358 (Fed. Cir. 2001) ....................................................................................9

*Trading Techs. Int'l, Inc. v. Open E Cry, LLC*,
728 F.3d 1309 (Fed. Cir. 2013) ....................................................................................3

*Trebro Mfg., Inc. v. Firefly Equip., LLC*,
748 F.3d 1159 (Fed. Cir. 2014) ..................................................................................13

*Wyeth & Cordis Corp. v. Abbott Labs.*,
720 F.3d 1380 (Fed. Cir. 2013) ..................................................................................11

## TABLE OF ABBREVIATIONS

| | |
|---|---|
| '482 patent | U.S. Patent No. 10,786,482 (D.I. 232, Ex. 8) |
| '621 patent | U.S. Patent No. 10,918,621 (D.I. 235, Ex. C) |
| '745 patent | U.S. Patent No. 10,039,745 (D.I. 232,Ex. 7) |
| '868 patent | U.S. Patent No. 10,772,868 (D.I. 235, Ex. B) |
| '987 patent | U.S. Patent No. 10,154,987 |
| ANDA | Abbreviated New Drug Application |
| Bionpharma | Defendant Bionpharma Inc. |
| Bionpharma's ANDA | ANDA No. 212408 |
| [Bionpharma's] ANDA Product | Subject matter of Bionpharma's ANDA No. 212408 |
| BMS | Bristol Myers Squibb |
| Byrn | Declaration of Stephen R. Byrn, Ph.D (D.I. 235) |
| CC Brief or CC Br. | Silvergate's Opening Claim Construction Brief in Case No. 20-1256, dated April 21, 2021 (Ex. 9). |
| Epaned® | EPANED® (enalapril maleate) Oral Solution, 1 mg/mL |
| Ex. | Refers to exhibits attached to the Opening Brief (Exs. 1-8) or hereto |
| DD | Disclosure dedication |
| DOE | Doctrine of equivalents |
| FDA | U.S. Food & Drug Administration |
| McSorley | Declaration of Robert McSorley (D.I. 246) |
| Moreton | Declaration of R. Christian Moreton, Ph.D. (D.I. 247) |
| Opposition or Opp. | Bionpharma's Opposition to Silvergate's Motion for Preliminary Injunction (D.I. 245) |
| Patel | Declaration of Amit Patel (D.I. 233) |
| PHE | Prosecution History Estoppel |
| PI Br. or Opening Brief | Silvergate's Motion for Preliminary Injunction (D.I. 232) |
| PI Claims | Collectively, claim 7 of the '745 patent; claims 9 and 12 of the '868 patent; claims 18, 21, 23 of the '482 patent; and claims 7, 13, 18, 22, 27, and 30 of the '621 patent |
| PI Patents | Collectively, the '745, '868, '482, and '621 patents |
| POSA | Person of ordinary skill in the art |
| R. Byrn | Reply Declaration of Stephen R. Bryn, Ph.D. (filed herewith) |

| R. Patel | Supplemental Declaration of Amit Patel (filed herewith) |
|---|---|
| R. Stec | Reply Declaration of Jeffery A. Stec, Ph.D. (filed herewith) |
| RTU | Ready-to-use |
| Silvergate | Plaintiff Silvergate Pharmaceuticals, Inc. |
| Stec | Declaration of Jeffery A. Stec, Ph.D. (D.I. 234) |
| USPTO | U.S. Patent & Trademark Office |

** Unless otherwise noted, all emphasis is added, all internal quotations and citations are omitted, and all "D.I." citations are to the docket in C.A. No. 18-1962.

Bionpharma's Opposition points to no factually or legally cognizable reason why Silvergate should not be granted a preliminary injunction.

**Bionpharma Failed to Rebut Likelihood of Success on the Merits.** With respect to infringement, Bionpharma does not dispute that its ANDA Product meets the vast majority of the limitations of the PI Claims. The only disputes Bionpharma raises are either: (a) a rehash of its incorrect PHE and DD arguments regarding the "buffer" and "preservative" limitations; or (b) based on legally and scientifically incorrect claim constructions.

With respect to validity, Bionpharma failed to raise *any* question of invalidity, let alone a substantial one. Bionpharma's written description and enablement arguments boil down to assertions that (1) that the Examiner erroneously issued claims purportedly covering "billions" of formulations, and (2) the specification only described/enabled *two* formulations. Bionpharma's beliefs regarding the propriety of the Examiner's issuance of the patents are not only irrelevant, they are wrong. The PI Claims cover a limited genus of stable, liquid formulations of enalapril, and the specification provides ample description regarding the full scope of those formulations. Bionpharma's only remaining invalidity contention—that the PI Claims of the '621 and '482 patents are obvious—fares no better at least because Bionpharma does not (and cannot) point to *any* evidence of motivation to combine prior art or reasonable expectation of success in doing so.

**Bionpharma Failed to Address, Let Alone Rebut Silvergate's Irreparable Harm.** Bionpharma's Opposition ignores the compelling evidence regarding irreparable harm. Instead, Bionpharma takes issue with when the PI Patents issued, and asserts that because market data for Epaned® exists, any harm is quantifiable. Neither assertion has any basis in law or fact.

**The Balance of Harms and Public Interest Weigh in Favor of an Injunction**. Bionpharma does not identify any evidence that it would suffer any real harm should Silvergate

be granted a preliminary injunction, let alone harm that outweighs the significant irreparable harm faced by Silvergate.  Instead, Bionpharma pointed *only* to the fact that it would not be permitted to enter a market protected by Silvergate's patents—which is no harm at all.  Nor does the public's purported interest in access to generic drugs outweigh the public's greater interest in protecting the significant investments of innovative companies like Silvergate to create medical advancements like Epaned®.  Silvergate's motion for preliminary injunction should be granted.

## I.   SUCCESS ON THE MERITS—INFRINGEMENT

Bionpharma only contests infringement regarding the buffer limitations of the '482, '868, and '621 PI Claims and preservative limitations of the '482 PI Claims.  However, Bionpharma failed to rebut the likelihood of a finding of infringement.

### A.   '621 AND '868 PATENTS, BUFFER LIMITATIONS—LITERAL INFRINGEMENT

Bionpharma's *only* rationale for why it does not literally meet the buffer limitations of the '621 and '868 PI claims—which *do not require any specific type of buffer*—is incorrect and applies an overly narrow claim constructions for the "buffer" terms.

Claims are to be interpreted in view of the *intrinsic record*: the claim language itself, the specification, and the file history.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312, 1315-16 (Fed. Cir. 2005).  As set forth in Silvergate's CC Brief, there is extensive support in the intrinsic record establishing that "buffer" as used in the PI Claims means "agent(s) that adjust and/or maintain pH."  Ex. 9, CC Br. at 5-10.  Bionpharma offers two incorrect constructions for "buffer": (a) the claimed buffer must be "an additional, separate buffer component" from any buffers formed from disassociated salts of enalapril; or, alternatively, (b) the buffer must include a "weak acid that has an acidic hydrogen with a pKa within ± 1 of the formulation pH."  Opp. at 17-18; Moreton Decl., ¶ 61.  In contrast with Silvergate's construction, neither Bionpharma construction has *any* explicit

or implied support in the intrinsic record.[1]  Ex. 9, CC Br. at 11-13.  In fact, both the claims and specification **contradict** Bionpharma's overly narrow constructions as they each **explicitly** contemplate enalapril **free base** in the claimed formulation, thus allowing for a buffer formed from a salt dissociated from enalapril.[2]  Ex. 9, CC Br. at 11-12; PI Br. at 7-8.  Thus, because Bionpharma's ANDA Product literally contains the recited "buffer" to adjust and maintain the pH in the recited pH ranges, it literally meets at least claim 30 of the '621 patent (which does not recite any specific amount of that buffer).  PI Br. at 7-8.

Bionpharma also cannot overcome a likelihood of infringement of the '621 and '868 PI claims which require that the concentration of the buffer to be "about 5 mM to about 20 mM."  PI Br. at 7.  Bionpharma argues that the ███████████████ in its ANDA Product is at most ████████████████████████ discussed in Silvergate's opening PI Brief, because Bionpharma does not believe that █████████████████████████ Opp. at 16.  This contention incorrect.  As discussed above, a "buffer" as recited by the PI Claims is the agent(s) that "adjusts and maintains the pH"—here, both the ██████████████████████ ██████████████████████████████████████ Indeed, Bionpharma's ANDA █████████████████████████ *Id.*, ¶ 5.  Accordingly, the amount of ████████████████████████ in Bionpharma's ANDA Product—██████████—literally meets the claim language "about 5 mM to about 20 mM." PI Br. at 7-8; Byrn, ¶¶ 24-32.  Moreover, even if Bionpharma were correct that the amount of

---

[1] Bionpharma's alternate "pKa" construction is also scientifically incorrect.  R. Byrn, ¶¶ 13-16.

[2] Bionpharma asserts that the claimed "buffer" in the '621 and '868 PI Claims cannot cover a buffer made from the disassociated salt of enalapril because the specification purportedly lacks written description of such a buffer.  Opp. at 17-18.  Bionpharma's assertion improperly conflates written description and claim construction (*see Trading Techs. Int'l, Inc. v. Open E Cry, LLC*, 728 F.3d 1309, 1319 (Fed. Cir. 2013)), and is also wrong because, as explained in § II below, Bionpharma's written description argument is contrary to law, and the claims have adequate written description.  Bionpharma's cited law is thus also inapposite.  Opp. at 16, 17.

████████████████ should be excluded such that the buffer amount is ██████ Bionpharma's ANDA Product still literally meets this claim limitation.  ████████████████████ of the entire claimed buffer range and "captures the purpose" of the "about 5 mM to about 20 mM" concentration of claimed buffer.  PI Br. at 6-8; Byrn, ¶¶ 24-32.

Regarding the amount limitation, Bionpharma advances an incorrect claim construction for "about" that is contrary to the stipulated claim construction.  Specifically, Bionpharma asks the Court to limit "about" to "rounded to the next whole number concentration unit."  Opp. at 16-17. This is wrong.  First, the parties agreed that "about" in these claims means "approximately."  C.A. No. 20-1256, D.I. 74-1 at A-1.  Consistently, the parties agreed that "about" means "approximately" in the '745 and '987 patents which were the subject of the February trial and contain the identical specification as the PI Patents.  The same terms used in related patents with identical specification are to be construed consistently.  *SightSound Techs., LLC v. Apple Inc*., 809 F.3d 1307, 1316 (Fed. Cir. 2015).   Finally, Bionpharma advanced this same incorrect claim construction in a litigation regarding a different Silvergate product where the patent at issue contained the same specification language that Bionpharma cites here.  Bionpharma's construction was rejected there and should be rejected here.  *Silvergate Pharm. Inc. v. Bionpharma Inc.*, No. 16-876, 2018 WL 1610513, at *4-5 (D. Del. Apr. 3, 2018) (finding that where "include" is defined as an "open-ended linking verb;" that "'about' is used to indicate that a value *includes* the standard level of error for the device or method being employed to determine the value;" and is not a limiting definition of "about.").   Thus, "about" in the PI Claims means "approximately" such that the amount of buffer "captures the purpose" of the claimed buffer.  PI Br. at 7-8.[3]

---

[3] Bionpharma's contention that prosecution history estoppel bars a DOE infringement claim (Opp. at 17) is irrelevant because Silvergate is alleging literal infringement.

4

### B.    '482 PATENT, CITRATE BUFFER LIMITATIONS—DOE INFRINGEMENT

Regarding the '482 PI Claims, Bionpharma's assertion that PHE results from the addition of concentration limitations to the claims during prosecution (Opp. at 14-15) amounts to an allegation that *any* narrowing amendment must give rise to PHE regardless of the circumstances. The *Cross Medical* case cited by Bionpharma explicitly recognizes that a claim amendment in response to a § 112 rejection may *not* give rise to PHE if the amendment is tangentially related to the equivalent in question.  *Cross Med. Prods., Inc. v. Medtronic Sofamor Danek, Inc.*, 480 F.3d 1335, 1341-43 (Fed. Cir. 2007).  Here, the amendment bears no more than a tangential relation to the equivalent.  Nothing in the prosecution history supports the notion that the concentration limitation was added to exclude non-citrate buffers.  Because the amendment is only tangentially related to Bionpharma's ███████ PHE cannot bar application of DOE.  *Insituform Techs., Inc. v. Cat. Contracting, Inc.*, 385 F.3d 1360, 1369 (Fed. Cir. 2004) (amendment regarding the number *and* location of vacuum sources was tangential to the equivalent—a different *number* of vacuum sources—where the amendment clarified that the novel feature was the *location* of the vacuum sources); *Eli Lilly & Co. v. Hospira, Inc.*, 933 F.3d 1320, 1331 (Fed. Cir. 2019) (amendment narrowing claims from reciting a group of compounds to a salt of a compound was tangential to the equivalent—a product containing a different salt of the recited compound).[4]

### C.    BIONPHARMA'S ANDA PRODUCT MEETS THE PRESERVATIVE LIMITATIONS

Bionpharma does not contest that its ANDA Product meets the preservative limitations of the '621 and '482 PI Claims.  Regarding the '868 PI Claims (which literally require sodium benzoate), Bionpharma asserts that: (a) application of DOE is barred due to the DD doctrine; and

---

[4] Bionpharma argues that Silvergate's Opening Brief focused on an "incorrect" PHE issue—the claim amendment converting 1-4 mg/ml to 5mM to 20mM—and "ignores" the so-called correct issue discussed above.  Silvergate did not "ignore" anything: the *only* PHE allegation in Bionpharma's notice letter was the one that Silvergate addressed.  PI Br. at 8-9.

(b) PHE results from an amendment during prosecution to recite a specific amount of sodium benzoate.  Opp. at 15.  Both assertions are unavailing.  First, Bionpharma's DD argument is identical to its DD argument advanced at trial.  PI Br. at 9.  For PHE, nothing in the prosecution history indicates that the amount was added to exclude ███████████████  Thus, because the amendment is only tangentially related to Bionpharma's ██████████  PHE cannot bar application of DOE.  *Insituform*, 385 F.3d at 1368-70; *Eli Lilly*, 933 F.3d at 1331.

## II.    NO SUBSTANTIAL QUESTION OF VALIDITY—WRITTEN DESCRIPTION

*Bionpharma Grossly Overinflates the Scope of the PI Claims.*  Bionpharma's only support for its contention that the scope of the PI Claims includes "billions" of formulations is that the '482 PI Claims contain a "comprising" transitional phrase, and thus could include any number of unrecited ingredients.  Opp. at 8-9 (citing Moreton, ¶ 141).  This is contrary to the law.  There is no requirement to provide written description for unclaimed elements in open-ended claims.  *Lochner Techs., LLC v. Vizio, Inc.*, 567 F. App'x 931, 939 (Fed. Cir. 2014).  Indeed, if Bionpharma were correct, no patent reciting "comprising" claims could ever have adequate written description.  Thus, Bionpharma's interpretation of the scope of the PI Claims is wrong.  *Allergan Sales, LLC v. Sandoz, Inc.*, 717 F. App'x 991, 995 (Fed. Cir. 2017) (no lack of written description where accused infringer inflated breadth covered by the claims).  Bionpharma's fallback contention that the PI Claims cover "thousands" of formulations (Opp. at 1, 9) is also wrong at least because it ignores the stability limitations in the PI Claims—which require that the claimed formulation be stable for at least 12, 18, and 24 months.[5]

*The Specification Adequately Describes the Full Scope of the Claims.*  The PI Claims do

---

[5] Bionpharma's contention that the PI Claims can include any buffer in combination with any preservative or amount ignores the language of the claims.  *See* Opp. at 9-11.  Bionpharma's contention appears to be based on Silvergate's assertion of DOE and is thus legally wrong; DOE and written description are distinct doctrines and legally require different analyses.

not recite "thousands" or "billions" of formulations, but instead recite the limited genus of oral liquid formulations with specific ingredients and stability properties. The specification contains ample written description for precisely such formulations, including: (a) a lengthy explanation regarding the variety of buffers, preservatives, and other ingredients that may be used; (b) an explanation regarding how to utilize these ingredients to maintain the pH to obtain stable, liquid formulations of enalapril; and (c) a multitude of working examples of such stable, liquid formulations, including 14.5 months of stability data. R. Byrn, ¶¶ 26-28.

Bionpharma's invalidity arguments are entirely based on ignoring this written description and artificially limiting the specification to Examples E5 and E6. Opp. at 7-8. Bionpharma's contention is contrary to Federal Circuit law which states that a specification need not include ***any*** working examples to provide adequate written description, let alone a working example of each and every embodiment. *Alcon Research Ltd. v. Barr Labs., Inc.*, 745 F.3d 1180, 1190-91 (Fed. Cir. 2014).[6] The law recognizes that claims reciting a genus are adequately described where the specification discloses ***either*** a representative number of species falling within the scope of the genus ***or*** structural features common to the members of the genus so that POSA can visualize or recognize the members of the genus. *Allergan Sales*, 717 F. App'x at 994-95; *Alcon*, 745 F.3d at 1190-91. Here, the specification discloses both: as noted above and further described by Dr. Byrn, it not only provides a detailed explanation of how a variety of stable, liquid formulations of enalapril may be created, but also provides numerous working examples of such stable, liquid formulations. R. Byrn, ¶¶ 26-28.

---

[6] Bionpharma's cited case law is inapposite as none involved a specification containing sufficient description of the genus and working examples thereof, as is the case here. Opp. at 11-12 (citing *Idenix Pharm. LLC v. Gilead Scis., Inc.*, 941 F.3d 1149 (Fed. Cir. 2019); *Nuvo Pharm. (Ir.) Designated Activity Co. v. Dr. Reddy's Labs. Inc.*, 923 F.3d 1368 (Fed. Cir. 2019); *Pernix Ir. Pain DAC v. Alvogen Malta Operations, Ltd.*, 323 F. Supp. 3d 566 (D. Del. 2018)).

Bionpharma's contentions that ███████████████ are not described is also wrong.  Opp. at 10.  Bionpharma ignores the disclosure in the specification regarding ████████ ██████████████ and asserts only that ████████████████████ is somehow "inoperable."  Opp. at 7, 10.  This argument appears to be based on the erroneous assumption that every example in the specification exemplifies every claim.  While the formulations of █████ █ would not be expected to be stable for 12 months (D.I. 195 at 319:19-320:3), they also do not fall within the scope of the ████████████ *Compare* '868 patent at █████████ ████████ ████████████████████████████████████████████████████████ █████████████.[7]

Bionpharma's contention that there is no description of any formulation that is stable past 12 months is also wrong.  The specification states that the formulations of the invention are stable for up to 36 months and provides 62-week (i.e., 14.5 months) stability data for examples E1-E4.  R. Byrn, ¶ 27, n. 2.  As Dr. Buckton explained at trial (and confirmed by Dr. Byrn), a POSA is able to take the rate of degradation reflected in that 14.5 month data and determine the longer term stability of the formulations is at least 24 months.  *Id.*

That two of the PI Claims are silent regarding pH does not raise a substantial question of validity.  The specification provides significant guidance regarding pH.  *Id.*, ¶¶ 26-28.

**The Examiner Did Not Mistakenly Issue The Claims.**  Bionpharma repeatedly asserts that the PI Claims "never should have issued" because (per Bionpharma) the examiner made a mistake in failing to find that Silvergate's PI Claims lack written description.  Opp. at 3; Moreton, ¶ 140.

---

[7] ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ████████████████████████████████████████████████████████████ ███████████████████████████████████████████

This assertion is both unsupported by the record and contrary to applicable law.  The presumption of validity includes a "presumption that the PTO does its job properly," *Superior Fireplace Co. v. Majestic Prods. Co.*, 270 F.3d 1358, 1367 n.1 (Fed. Cir. 2001), thus Bionpharma's attacks on the competency of the examiner should be ignored.  *See Abbott Biotechnology Ltd. v. Centocor Ortho Biotech, Inc.*, No. 09-40089, 2014 WL 7330777, at *7-8 (D. Mass. Dec. 19, 2014).

The only alleged mistake is that the examiner did not reject the claims based on written description and that the prosecution included inventor declarations (dated May 14 and 15, 2020). Opp. at 8.  Bionpharma is wrong on the facts and the law.  First, the May 14th Mosher Declaration was submitted in response to an *obviousness* rejection (there was no written description rejection to respond to) and simply provided additional data regarding the surprising and unexpected stability of formulations prepared using the teachings of the specification.  Ex. 11, ¶¶ 7, 9, 12-13, 26; Ex. 12 at 6-12.  Second, the information in the May 15th Mosher Declaration is nothing more than explanation and exemplification of disclosure *already in the specification*.  As the Applicant stated in the Office Action response related to the May 15, 2020 declaration: "[a] buffer concentration 'between about 5 mM and about 20 mM' was described in the instant application, published as 2019/0070147 A1, e.g., in paragraph [0066],[8] Example B, Example E, Table B-1, Table B-2, Table E-1."  Ex. 4 at 8.  The Applicant then notes that Dr. Mosher agrees with that citation and provides "additional embodiments" of the formulations *that were disclosed in the specification*.  *Id*.  Indeed, the May 15, 2020 Mosher declaration describes that data as

---

[8] Paragraph [0066] of the application (which is also found at, *e.g.* '868 patent at 14:51-60) states: "In some embodiments, the buffer concentration is between about 5 mM and about 20 mM. In some embodiments, the buffer concentration is about 5 mM, about 6 mM, about 7 mM, about 8 mM, about 9 mM, about 10 mM, about 11 mM, about 12 mM, about 13 mM, about 14 mM, about 15 mM, about 16 mM, about 17 mM, about 18 mM, about 19 mM, or about 20 mM. In some embodiments, the buffer concentration is about 5 mM. In some embodiments, the buffer concentration is about 10 mM. In some embodiments, the buffer concentration is about 20 mM."

(continued...)

exemplifying "formulations of the '159 application."  Ex. 10, ¶ 19.  Nothing in the prosecution history indicates that the Examiner understood the information in the Mosher Declarations to be anything more than evidence that the formulations described in the specification function as described in the specification.[9]

## III.    NO SUBSTANTIAL QUESTION OF VALIDITY—ENABLEMENT

Bionpharma's lack of enablement arguments mirror its flawed written description arguments.  Bionpharma incorrectly asserts the PI Claims cover "thousands" (if not "billions") of potential formulations while also incorrectly limiting the specification to *two* formulations (E5 and E6), and based on those erroneous premises concludes that it would require undue experimentation to practice the claims.  Opp. at 12-13.  Bionpharma is wrong.

First, as explained above, the PI Claims do not recite "billions" or "thousands" of formulations and the specification contains significantly more than two examples.  Instead, the specification's extensive disclosures inform a POSA how to create the genus of stable, liquid formulations of enalapril recited in the PI Claims.  R. Byrn, ¶¶ 26-27, 29.  The notion that a POSA would require years' worth of stability testing on *any* of these formulations, let alone "billions" of them is also wrong.  It would be a simple and routine matter for a POSA to practice the full scope of the claims.  *Id.*, ¶¶ 29-31.  Second, as with written description, Bionpharma's contention that enablement is lacking for formulations containing ██████████, and the two PI Claims that do not recite a specific pH, is wrong. Opp. at 13; R. Byrn, ¶¶ 26-31.

There is no substantial question that the PI Claims are adequately enabled.  *Monsanto Co.*

---

[9] Bionpharma's assertion that the data in the Mosher Declaration was somehow improper is wrong. Bionpharma's own cited case law states that such information can inform the written description inquiry, but simply cannot *alone* provide otherwise *entirely missing* written description.  *Cf. Enzo Biochem, Inc. v. Gen-Probe Inc.*, 323 F.3d 956, 969 (Fed. Cir. 2002) ("one can show possession of an invention by means of an affidavit or declaration during prosecution," but such a showing "*alone* does not cure the lack of written description in the specification").

*v. Scruggs*, 459 F.3d 1328, 1338 (Fed. Cir. 2006) (claims to a genus were adequately enabled where the specification provided multiple examples of species within that genus); *Erfindergemeinschaft UroPep GbR v. Eli Lilly & Co.*, 276 F. Supp. 3d 629, 659-663 (E.D. Tex. 2017) (claims were enabled where the evidence showed the quantity of experimentation necessary was routine and the specification provided direction and guidance in light of the description, incorporated references, and working examples).[10]

## IV.    NO SUBSTANTIAL QUESTION OF VALIDITY—OBVIOUSNESS

Bionpharma alleges obviousness only with respect to the PI Claims that recite paraben preservative. Regarding those claims, Bionpharma's obviousness contention is based entirely on the erroneous assertion that the claimed formulations are "essentially" a variant of the Epaned® Kit resulting from "routine optimization" by involving removal of several excipients. Opp. at 13-14. Bionpharma's argument is fatally flawed at least because it fails to identify (1) ***any*** evidence of motivation to change Epaned® Kit in any manner, let alone to combine it with prior art such that excipients would be removed; or (2) ***any*** evidence that a POSA, even if so motivated, would have a reasonable expectation of success in doing so.[11] For this reason, alone, Bionpharma failed to raise a substantial question of obviousness. *Mytee Prods., Inc. v. Harris Research, Inc.*, 439 F.

---

[10] Bionpharma's cited case law—*Idenix*, 941 F. 3d 1149 and *Wyeth & Cordis Corp. v. Abbott Labs.*, 720 F.3d 1380 (Fed. Cir. 2013)—are not on point here as each case involved claims with "immense breadth" where the specification gave little to no guidance regarding how to practice the full scope of such claims.

[11] Bionpharma's assertion that the '747 patent discusses liquid formulations stable for up to 36 months (Opp. at 14) is wrong. The '747 patent defines "stability" for oral liquid solutions as 90% enalapril remaining at the end of the storage period as opposed to the 95% required by the PI Claims. R. Byrn Ex. R ('747 patent) at 13:7-10. Also, there is no data in the '747 patent that would indicate to a POSA that the powder for solution formulations described would be stable (with 95% enalapril and 5% or less degradants) as required by the PI Claims. As discussed by Dr. Buckton during trial, the data in Example 2 of the '747 patent does not provide a reasonable expectation of achieving an enalapril solution that is stable for a year or more. D.I. 199 at 858:18-859:10.

App'x 882, 886 (Fed. Cir. 2011); *Sanofi-Aventis U.S. LLC v. Mylan GmbH*, No. 17-9105, 2020 WL 1151191, at *33 (D.N.J. Mar. 9, 2020).  Moreover, as explained by Dr. Byrn, there is no motivation to combine or reasonable expectation of success to "reformulate" the Epaned® Kit into the stable (with an increased level and length of stability), liquid formulation recited in the Paraben PI Claims.  R. Byrn, ¶¶ 18-22.

Finally, Bionpharma's contention regarding lack of nexus is also wrong.  Opp. at 14.  As the specification and claims state, the claimed formulations (including the claimed formulations containing paraben) are unexpectedly stable, not just the commercial Epaned® formulation.  There is no substantial question that ***any*** of the PI Claims are non-obvious.

## V.       BIONPHARMA IGNORES FACTS DEMONSTRATING IRREPARABLE HARM

***Silvergate Did Not "Delay."***  Bionpharma first asserts there is no irreparable harm because Silvergate purportedly delayed in filing the '482, '868, and '621 PI Patents.  Opp. at 18. Bionpharma's assertion is baseless.  Indeed, the only "authority" Bionpharma's cites involves a situation where the patentee delayed in ***filing suit***, which is inapplicable as Silvergate sued Bionpharma within mere weeks of issuance of the PI Patents.  *Id.*  Moreover, when it filed each of the patents at issue in this matter, Silvergate requested (and paid for, at significant cost) the USPTO's Track One prioritized examination process with the purpose of expediting prosecution. Bionpharma's theory imposes an obligation on Silvergate to file for patents, and on the USPTO to complete prosecution of those patents, before Bionpharma's unilateral choice to file an ANDA. This has no basis in the law.  Moreover, Silvergate requested, and Bionpharma resisted, a trial regarding all of the asserted patents, in mid-2021.  It was at Bionpharma's request that the patents were separated into two trials, so Bionpharma should not now be heard to complain that resolution regarding some patents will occur after resolution regarding others.

***Silvergate's Harm is Not "Quantifiable."***  Bionpharma's assertion that harm to Silvergate

is "quantifiable" (Opp. at 18-19) ignores or misrepresents the facts.  First, Bionpharma incorrectly

assumes that because ████████████████████████████████████████████

████████████████████████████████████████████ *Id.* at 19.  Under

Bionpharma's theory, no branded drug company could ever receive a preliminary injunction █

████████████████████████ that cannot be true.  R. Stec, ¶ 9.  Moreover, Bionpharma's

theory that Silvergate could readily quantify its harms is ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████ ████████████ Opp. at 19.  This is wrong.  As explained in the Stec and Patel

Declarations (and as apparently ignored by Bionpharma), the ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████ Patel, ¶¶ 15, 18; Stec, ¶¶ 81-82.

Moreover,  even  if ████████████████████████████████████

quantified ████████████ the Federal Circuit has held this does not mean money damages are

adequate, ████████████████████████████████████████

*Trebro Mfg., Inc. v. Firefly Equip., LLC*, 748 F.3d 1159, 1170 (Fed. Cir. 2014) (ability to track did

not mean damages were adequate).  Bionpharma ignores these ████████████████████

████████████████████████████████████████████

████████████████████████████████████████████

████████████████████████████████████████████ Patel,

¶¶ 20-47; Stec, ¶¶ 75-80; PI Br. at 14-19. ████████████████████ Bionpharma's cited

law that monetary losses are not irreparable is inapposite. *See* Opp. at 18-20.

The only other support Bionpharma provides for why any of Silvergate's harms would be "quantifiable" is the case example involving Plavix® (which allegedly "rebounded entirely" when the generic was removed from the market a few weeks after an at-risk launch) and ██████████ ████████████████████████████ Opp. at 19-20. Neither shows a lack of irreparable harm. First, Plavix█████████████████ █████████ █████████ ████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████ and thus Plavix® fails to provide any evidence that Silvergate will not suffer irreparable harm from Bionpharma's at-risk launch. R. Patel, ¶¶ 3-11; R. Stec, ¶¶ 13-24. Bionpharma is also wrong ████████████████████████████ ████████████████████████████████████████████ █ ██ ████████████████████████████████████████████████ ████████████████████████ R. Stec, ¶¶ 25-28. Thus, Bionpharma failed to address or rebut the ████████████ harms to Silvergate that would result from an at-risk launch of Bionpharma's ANDA product.

## VI.    BALANCE OF HARDSHIPS AND PUBLIC POLICY SUPPORT SILVERGATE

Bionpharma asserts that it will suffer significant harm because it "waited patiently" for the 30-month stay to end, and it should not be forced to "suffer" any further delay. A stay that is mandated by statute is <u>not</u> a hardship, nor is Bionpharma's inability to enter a market protected by Silvergate's patents with a product that infringes those patents. Any expectation of such a right is, and always was, unreasonable. The lack of actual harm to Bionpharma cannot outweigh the clear irreparable harm to Silvergate should Bionpharma be permitted to launch. Also, Bionpharma's assertion that the public interest weighs in favor of early access to its lower-cost generic product

has also been repeatedly and soundly rejected by the Federal Circuit.  *Sanofi-Synthelabo v. Apotex, Inc.*, 470 F.3d 1368, 1383-84 (Fed. Cir. 2006) (public interest weighed in favor of protecting the investment of innovative drug companies); *Pfizer, Inc. v. Teva Pharm., USA, Inc*., 429 F.3d 1364, 1382 (Fed. Cir. 2005) (same).

## VII.   BIONPHARMA FAILS TO SUPPORT ITS BOND REQUEST

Any bond should **_only_** cover Bionpharma's **_losses while the injunction is in place._**  *Par Pharm., Inc. v. TWI Pharm., Inc.*, No. CCB-11-2466, 2014 WL 3956024, *6 (D. Md. Aug. 12, 2014).  Because Bionpharma is a first filer and has 180-days of exclusivity (and thus no other unauthorized generics will be on the market during any injunction), any loss by Bionpharma during the injunction term would stem only from the **_delay_** in Bionpharma's launch rather than any **_actual_** lost profits to other competitors.  Yet Bionpharma's requested bond amount seeks precisely such inappropriate "lost profits."  R. Stec, ¶¶ 29, 37.  Worse, the requested bond is also absurd on its face, wholly unsupported by any evidence, and based only on speculation that overestimates the expected "lost profits."  *Id.*, ¶¶ 29-40.  Indeed, not only is Bionpharma's requested bond not based on **_any_** actual data from Bionpharma, ████████████████████████████████ ████████████████████████████████  *Id.*, ¶ 40.  Bionpharma bears the burden of establishing an appropriate bond amount and has utterly failed to do so.  *LEGO A/S v. ZURU Inc.*, 799 F. App'x 823, 837 (Fed. Cir. 2020) (courts have discretion to "dispense with the bond requirement" where there has been no proof of harm to those enjoined).  If the Court is inclined to order a bond, such bond should be based on actual evidence and orders of magnitude less than Bionpharma asserts.

## VIII.   CONCLUSION

Silvergate respectfully requests grant of a Preliminary Injunction.

MORRIS, NICHOLS, ARSHT & TUNNELL LLP

/s/ Megan E. Dellinger

OF COUNSEL:

Wendy L. Devine
Kristina M. Hanson
Yan-Xin Li
WILSON SONSINI GOODRICH & ROSATI
One Market Plaza, Spear Tower, Suite 3300
San Francisco, CA  94105
(415) 947-2000

Natalie J. Morgan
WILSON SONSINI GOODRICH & ROSATI
12235 El Camino Real, Suite 200
San Diego, CA  92130-3002
(858) 350-2300

Ty W. Callahan
Granville C. Kaufman
WILSON SONSINI GOODRICH & ROSATI
633 West Fifth Street, Suite 1550
Los Angeles, CA 90071
(323) 210-2900

April 26, 2021

Jack B. Blumenfeld (#1014)
Megan E. Dellinger (#5739)
1201 North Market Street
P.O. Box 1347
Wilmington, DE  19899
(302) 658-9200
jblumenfeld@morrisnichols.com
mdellinger@morrisnichols.com

*Attorneys for Plaintiff Silvergate
Pharmaceuticals, Inc.*